IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                          )
Julie Goldberg-Botvin, *et al.*,              )
                                                          )
                Plaintiffs       )
                                                          )
v.                                                      )   Civil Action No. 12-cv-1292 (RCL)
                                                          )
The Islamic Republic Of Iran              )
                                                          )
                Defendant     )
_____)

**PLAINTIFFS' MOTION WITH POINTS AND AUTHORITIES TO TAKE
JUDICIAL NOTICE OF THIS COURT'S JULY 3, 2012 FINDINGS OF FACT
AND CONCLUSIONS OF LAW IN RELATED CASE AND
<u>FOR ENTRY OF DEFAULT JUDGMENT</u>**

COME NOW the Plaintiffs, by and through their undersigned counsel, and pursuant to Fed. R. Evid. 201, respectfully move this Court to (1) take judicial notice of all of the findings of fact and conclusions of law contained in the Court's July 3, 2012 Memorandum Opinion entered in the related case of *Estate of Yael Botvin, et al. v. Islamic Republic of Iran, et al.*, 873 F. Supp. 2d 232 (D.D.C. 2012) ("Botvin I"), attached hereto as Exhibit A; (2) adopt the findings of fact and conclusions of law contained in said Memorandum Opinion and find them to be fully applicable to this pending matter; and (3) make findings and award a Judgment for the damages suffered by Plaintiffs Julie Goldberg-Botvin, Tamar Botvin Dagan, Michal Botvin and award punitive damages to each of them and the Estate of Yael Botvin pursuant to the private cause of action found in 28 U.S.C. § 1605A(c).

In support of this Motion, Plaintiffs state the following:

**PROCEDURAL HISTORY**

On February 2, 2005, Plaintiffs filed *Botvin v. Islamic Republic of Iran*, CA 05-0220 (RMU), pursuant to 28 U.S.C. § 1605(a)(7), which created subject matter jurisdiction, but did not at the time provide a federal private cause of action for plaintiffs' case. On July 3, 2012, this Court entered Judgment against the Islamic Republic of Iran in Botvin I, awarding compensatory damages in the amount of $1,704,457 to the Estate of Yael Botvin. *Estate of Botvin*, 873 F. Supp.2d at 243. Because the individuals were living in Israel at the time of the attack, the Court applied Israeli law to determine if there was a cause of action under which Yael Botvin's surviving mother, Julie Goldberg-Botvin, and sisters, Tamar Botvin Dagan and Michal Botvin, could recover damages. *Id*. at 242-43. This Court found that Israeli law did not provide a cause of action, and thus denied these individual Plaintiffs' motion for an award damages for solatium. *Id*. at 245. The Court did award compensatory damages in the amount of $1,704,457 to Yael Botvin's estate under Israeli law. *Id*. at 244,

Following the entry of the Judgment, on August 3, 2012, Plaintiffs filed this action, based upon the enactment of the National Defense Authorization Act of 2008, which provides that an action under 28 U.S.C. § 1605A can be filed within 60 days of a final judgment being entered in a related 28 U.S.C. § 1605(a)(7) case. Plaintiffs filed this related action within 60 days of the judgment issued pursuant to 28 U.S.C. § 1605(a)(7) in *Estate of Yael Botvin, et al.* 873 F. Supp. 2d 232 (D.D.C. 2012) alleging their right to recover under the newly created federal private cause of action under 28 U.S.C. § 1605A(c).

As the Court has already made findings as to the liability of Iran for the act of terrorism which killed Yael Botvin on September 4, 1997 at the Ben Yehuda Mall in Jerusalem, Israel, the Court should adopt those findings in this case and award damages judgments to Julie Goldberg-Botvin, Tamar Botvin Dagan and Michal Botvin for their solatium claims, and punitive damages to Julie Goldberg-Botvin, Tamar Botvin Dagan, Michal Botvin and the Estate of Yael Botvin under 28 U.S.C. § 1605A(c), as now permitted under applicable law.  In awarding punitive damages, the Plaintiffs seek an award against the Islamic Republic of Iran for its long standing policy and practice of committing heinous murderous terrorist attacks upon innocent civilians and children.

## ARGUMENT

I. **THIS COURT HAS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS**

Under 28 U.S.C. § 1605A(a)(2), the court shall hear a claim against a foreign state if (1) the foreign state was designated as a state sponsor of terrorism at the time the terrorist act occurred and (2) the claimant or the victim was a national of the United States.  In the present case, the first requirement is met because Iran was designated as a state sponsor of terrorism by the Secretary of State in 1984, U.S. Dep't of State, Determination Pursuant to Section 6(i) of the Export Administration Act of 1979-Iran, 49 Fed.Reg. 2836, Jan. 23, 1984, and the Department of State maintains that designation. The second requirement is met because Julie Goldberg-Botvin, Tamar Botvin Dagan, Michal Botvin, and the decedent, Yael Botvin, were all nationals of the United States when Yael was tragically and senselessly murdered while shopping for school supplies on a heavily populated and popular public shopping mall in Jerusalem, Israel. *Estate of*

*Botvin*, 873 F.Supp.2d at 238-39. Accordingly, the Court has subject matter jurisdiction over these claims.

    II.    **THIS COURT SHOULD TAKE JUDICIAL NOTICE OF THE COURT'S PREVIOUS FINDING OF LIABILTY ON THE PART OF THE DEFENDANT FOR THIS TERRORIST ATTACK AND FIND LIABILITY AGAINST THE DEFENDANTS IN THIS MATTER.**

Plaintiffs in this action are family members of Yael Botvin, who was murdered in the September 4, 1997 triple suicide bombing attack on the Ben Yehuda street pedestrian mall in Jerusalem, Israel by the terrorist organization HAMAS aka the Islamic Resistance Movement ("HAMAS"). *Estate of Botvin*, 873 F. Supp. 2d at 234-35. The named Defendant in this action, the Islamic Republic of Iran ("Iran") is the same defendant as named in the *Estate of Yael Botvin* matter. In *Estate of Yael Botvin*, this Court took judicial notice of the facts established in *Campuzano v. Islamic Republic of Iran*, 281 F. Supp. 2d 258 (D.D.C. 2003), regarding the responsibility of Iran and its sponsored terror organization, HAMAS, which is designated by the US Department of State as a Foreign Terrorist Organization ("FTO"). The Court should similarly take notice of the facts in this matter, and find Iran liable for the suicide bombing and injuries that flow from it. *Id*. at 269-70; *Estate of Botvin*, 873 F. Supp. 2d at 242.

In *Estate of Yael Botvin*, Iran defaulted and did not make an appearance. Iran has also defaulted in this case. (*See* Clerk's Entry of Default, filed on January 22, 2013, Docket # 12). The Plaintiffs hereby submit and incorporate by reference a full copy of the Memorandum Opinion, containing findings of fact and conclusions of law, entered in the *Estate of Yael Botvin* matter, and attach same hereto as Exhibit A. The Plaintiffs also hereby submit and incorporate by reference the Order of Default Judgment, entered on July 3, 2012, in the *Estate of Yael Botvin* matter, attached hereto as Exhibit B.

4

The Plaintiffs respectfully submit that the issues pertaining to the Defendant's liability in this matter are the same as those issues that were before the Court in the *Estate of Yael Botvin*, and accordingly as this Court has already heard and ruled on the issues involving the Iran's liability for carrying out the suicide attack that caused the death of Yael Botvin, hereby request that, pursuant to Fed. R. Evid. 201, this Court take judicial notice of the Memorandum Opinion in *Estate of Yael Botvin*, and incorporate the findings of fact as to the liability of the Defendant, Iran, in the instant case, thereby obviating the need for a further trial on the issue of the liability of Iran *Estate of Yael Botvin ,*873 F. Supp. 2d at 242; *See also Campuzano v.Islamic Republic of Iran,* 281 F.Supp.2d 258, 261–62 (D.D.C. 2003)

Taking judicial notice of previously entered findings of fact and conclusions of law has been followed in other matters similar to this case, i.e. where a judge has entered findings of fact and conclusions of law and subsequently applied those same findings to a later filed case arising out of the same factual scenario. *See Estate of Steven Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150 (D.D.C. 2011); *Valore*, 700 F. Supp. 2d at 85; *Prevatt v. Islamic Republic of Iran,* 421 F. Supp. 2d. 152, 155 (D.D.C. 2006); *Haim*, 425 F. Supp. 2d at 60.

The Plaintiffs accordingly request that the Court enter Judgment as to liability against the Defendant.

### III. THE PLAINTIFFS ARE ENTITLED TO DAMAGES PURSUANT TO 28 U.S.C. § 1605A(c).

Plaintiffs Julie Goldberg-Botvin, Tamar Botvin Dagan and Michal Botvin are each entitled to solatium damages against Iran because they are immediate family members of Yael Botvin, being the mother and sisters of the decedent. In addition, each

of them and the estate of Yael Botvin are also entitled to an award of punitive damages against Iran, under 28 U.S.C. § 1605A(c), for their sponsorship of HAMAS and this heinous act of murder. In order for a plaintiff to receive damages, the plaintiffs' injuries resulting from a state sponsor of terror's actions must have been reasonably certain to occur. *Salazar v. Islamic Republic of Iran,* 370 F. Supp. 2d 105, 115–16 (D.D.C.2005) *quoting Hill v. Republic of Iraq,* 328 F.3d 680, 681 (D.C. Cir. 2003) (internal quotations omitted). In the present case, the Defendant's act of supporting Hamas, an infamous and murderous terrorist organization, resulted, with certain inevitability, in a triple suicide bombing at a pedestrian mall in Jerusalem on September 4, 1997 committed by a HAMAS homicide bomber with explosives packed with nails, screws, pieces of glass, and chemical poisons. The acts of Iran in supporting HAMAS and the attack committed by HAMAS resulting in the murder of 14 year old Yael Botvin, a bright young school girl buying school supplies at a public mall in Jerusalem, Israel was a reasonably foreseeable outcome of the decision of Iran to support HAMAS and its terrorist activities.

   A. <u>Compensatory Solatium Damages</u>

Yael Botvin's mother, Julie Goldberg-Botvin, and Yael's sisters, Tamar Botvin Dagan and Michal Botvin are each entitled to solatium damages. Damages for solatium are to compensate for the "the mental anguish, bereavement[,] and grief that those with a close personal relationship to a decedent experience as the result of the decedent's death, as well as the harm caused by the loss of the decedent['s] society and comfort." *Valore*, 700 F.Supp.2d at 85 *citing Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 22 (D.D.C. 2009, *citing Dammarell v. Islamic Republic of Iran*, 281 F. Supp. 2d 105, 196-97 (D.D.C. 2003). The Court has in previous decisions on behalf of American victims of Iranian and other state sponsored terrorism established a standard for solatium damages

under the FSIA. The general rule of the Court is that parents of deceased victims should receive a baseline award of $5 million in damages, and siblings should receive a baseline award of $2.5 million in damages. *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229, 269 (D.D.C. 2006). These amounts may fluctuate from the baselines if there are aggravating circumstances, such as a "general feeling of permanent loss or change caused by decedent's absence," *Murphy*, 740 F. Supp.2d at 79 *quoting Flatow v Islamic Republic of Iran*, 999 F. Supp. 1, 31 (D.D.C. 1998), or other "circumstances that appreciably worsen a claimant's pain and suffering." *Murphy*, 740 F. Supp. 2d at 79 *quoting Greenbaum v. Islamic Republic of Iran*, 451 F. Supp. 2d 90, 108 (D.D.C. 2006). Aggravating circumstances allow the Court considerable discretion to increase a plaintiff's damages by substantial amounts. *See Valore* 700 F.Supp.2d at 86 (solatium damages increased by 25% due to aggravating circumstances); *Greenbaum* 451 F.Supp.2d at 108 (solatium damages increased by $1 million due to aggravating circumstances). In *Wultz v. Islamic Republic of Iran*, the court increased the plaintiff's baseline award from $5 million to $7 million because the plaintiff directly witnessed his son's body impacted by shrapnel, and also later suffered Post-Traumatic Stress Disorder ("PTSD"). 864 F. Supp. 2d 24, 40 (D.D.C. 2012). There are similar aggravating circumstances in this case which justify an upward departure in the solatium damages calculation for the surviving mother and sisters of Yael Botvin.

  1.  Julie Goldberg-Botvin

In the present case, Yael's mother, Julie Goldberg-Botvin experienced and continues to experience mental anguish, bereavement, and unbearable grief as a result of her daughter's heinous murder and tragic death and corresponding loss of society and comfort. In her testimony which she gave by deposition in the *Estate of Yael Botvin*

matter, and which the Plaintiffs attach hereto as Exhibit C and incorporate herein by reference, are excerpts of Julie Botvin-Goldberg's deposition testimony.[1] Mrs. Goldberg Botvin testified as follows:

> Q. Tell the court what it has been like these last ten years in relation to how your life changed, how you have felt, how you have suffered, and what you have observed about your daughter Tamar and Michal over the past ten years as it relates to the murder of Yael?
> A. I think it's—it's a terrible thing to lose a child, especially—it's—its just a very difficult thing to get through.  I think it was hard for all of us.  We never spoke to the public, to the cameras.  We didn't want to become famous and–and known…We might look okay on the outside, but on the inside we are not okay, even ten years later.  For me it's terrible to see Yael's friends who are now 24, 25 years old, and married and some of them have babies.  It is very difficult.  I was invited recently to a wedding of one of them, and I had to go because it was my neighbor, but it was very difficult and I –I am not going to do that again.

Ex.C., p. 60. As a result of her unbearable grief, Mrs. Goldberg-Botvin is entitled to the baseline solatium damages award of $5 million and to an upward departure as the Court shall determine based upon the aggravating circumstances that exist in this case. Mrs. Goldberg-Botvin directly witnessed her daughter's lifeless body immediately after the terrorist attack, images which haunt her to this day, which presents aggravating circumstances similar to that suffered by the plaintiff in *Wultz*. 864 F. Supp 2d. at 40. According to Mrs. Goldberg-Botvin's testimony in her deposition,

> Q. What was it like to watch that television knowing that your daughter Yael was not yet safely home?
> A. It was very frightening to see that – to see this bombing with people running and screaming.  And I remember clearly seeing somebody lying on the ground and somebody bending over this person, and afterwards during the Shiva, the man that found Yael came to my house and told me about how he found her, and I think

---

[1] For the Court's convenience, Plaintiffs have only attached hereto the relevant excerpts from the testimony of Julie Botvin-Goldberg as Exhibit C.  Upon request by the Court, Plaintiffs can deliver the entire deposition transcript.

>> that I was –I mean, I had—I saw her and didn't know it was her. I didn't know it was a little girl. But I remember somebody lying there exactly in the place where he told me he found her.
> Q. When you close your eyes, can see that picture on the TV screen?
> A. Yes, absolutely.
> Q. Does that happen often?
> A. Yes, whenever I – when I think about her, and I can't sleep, that's what happens, yes.

*Id*. at p.43.

Consequently, Mrs. Goldberg-Botvin, who was extremely close with her daughter, Yael, should receive a significant upward adjustment from the $5 million baseline also because she witnessed the tragic image of her young daughter's death immediately after her passing; an aggravating circumstance as in *Wultz*.

2. Tamar Botvin Dagan

Tamar Botvin Dagan, Yael's older sister, who was extremely close with her, is also entitled to solatium damages because she experienced and continues to experience mental anguish, bereavement, and unbearable grief as a result of her sister's death and corresponding loss of society and comfort. Tamar Botvin Dagan also provided sworn testimony in the form of a sworn affidavit in the *Estate of Yael Botvin* matter. Plaintiffs attach hereto as Exhibit D, and incorporate by reference Tamar Botvin Dagan's sworn Affidavit.

According to Tamar, she has "found it very difficult to discuss the emotional impact and effect [Yael's] death has had on [her]". Ex.D, ¶7. Tamar speaks fondly of Yael. "If I was sad, Yael could always make me feel better with her impressions, funny accents or dancing. If she was sad, she told us why with such dramatic exaggeration and self awareness that you couldn't keep from laughing." *Id*. at ¶9. "Yael's energy and enthusiasm were contagious to everyone around her." *Id*. at ¶11. "The hardest part about

9

Yael's death for me is the realization that I will never know Yael as a grown up and what she would be like." *Id.*at ¶8.

On the day that Yael was murdered, Tamar was on a school trip. *Id.* at ¶ 14. "The hours which went by after I found out there had been a bombing and called my house to discover Yael's friend answering the phone, until a teacher came to confirm what I already guessed was true were the longest and worst of my life." *Id.* The loss of Yael was even made more difficult on Tamar because of the earlier untimely death of her father. "I lost my sister less than four years after my father died of coronary artery disease. We were just beginning to feel like we were coming to terms with the sudden loss of a parent when our family was torn apart again." *Id.* at ¶15.

In addition to Tamar's testimony by Affidavit, Tamar's mother testified as to the unbearable emotional distress Yael's death caused Tamar:

> Q: What was [Tamar's] relationship with your daughter Yael prior to the time that Yael was murdered in the terrorist bombing in Jerusalem?
> A: They were very close, not only close in age, because they were 18 months apart, but they were good friends and they were very close.
> Q. How did the murder of Yael …affect Tamar?
> A. I think it was the hardest for her. The hardest of all of us. She was very – it very difficult for her to deal with and she had a very difficult time, both socially and academically, and – it was a very hard period for her to—to get over this, which I think she still hasn't gotten over.

Ex. C, p. 14-15. Ms. Goldberg-Botvin went on to say that, "[Tamar] missed [Yael] terribly." *Id*. at p. 57. This event affected Tamar so deeply, that she is unable to talk about the murder of her sister, Yael, or to give an oral deposition. Tamar has only been able to describe the emotional damages she has suffered as a result of her sister's murder by giving a sworn affidavit, as attached hereto. As Mrs. Goldberg-Botvin explained:

10

> Q. Why is it you believe that Tamar was unable or unwilling to either speak with me verbally or to appear here today before the court reporter?
> A. I think because she is very sensitive, and this was really a big tragedy in her life and she is just not able to express herself in person. And – that's why she agreed to write something, which is also difficult for her to do.

*Id*. at p. 18.

Consequently, Tamar should receive the baseline solatium damages award of $2.5 million and such significant upward adjustment as the court deems proper.

3. Michal Botvin

This Court should also find that Michal Botvin, Yael's younger sister, who was also extremely close with her, is entitled to solatium damages because she experienced and continues to experience mental anguish, bereavement, and unbearable grief as a result of her sister's death and corresponding loss of society and comfort.

In her testimony which she gave by deposition in the *Estate of Yael Botvin* matter, and which the Plaintiffs attach hereto as Exhibit E[2] and incorporate herein by reference, Michal described the relationship she had with her sister, Yael:

> Q: Now, would you please tell the court what you most remember about your sister Yael?
> A: Well, Yael was two years older than me, so she was a sister and a friend. We had a lot of fun together, that's mostly what I remember. Yael was just very easy to have a lot of fun with her, so I just – good times, that's what I remember, and being very close.
> . . . . I remember most of Yael as she was always happy and had a lot of energy and enthusiasm, and was very funny and was trying to make us feel better, and like I said, trying to – if someone was sad just trying to make them laugh with her funny faces and all.

Ex. E, pp. 5-6, 12.

---

[2] For the Court's convenience, Plaintiffs have only attached hereto the relevant excerpts from the testimony of Michal Botvin as Exhibit E. Upon request by the Court, Plaintiffs can deliver the entire deposition transcript

11

Michal also described the intense emotional trauma she suffered on the day her sister Yael was murdered. Michal testified that on the day that Yael was murdered she was with her mother and they went together to the hospital.

> Q. What was it like to have the experience that—with your mother at the hospital, and to have learned that your sister was murdered?
> A. The whole time before – they always told me that we were going to the hospital to see if Yael was injured, and no one really talked about it, that Yael might not be – be with us. So the whole experience for me was that maybe Yael was injured or scared or not coming home. So I didn't really think that maybe she was murdered, so it was very shocking to learn Yael was murdered.
>
> . . . .
> Q. Do you think about that day often?
> A. Yes. It is a little hard for me to think about that day, so I try not to, but yeah.

*Id*. at p. 10-11.

Michal further explained what it has been like for herself, for her mother and for her sister, Tamar, since her sister was murdered:

> Q. And what was it like over these past ten years since your sister was murdered, and how did – how did her loss upset you?
> A. Obviously, it is very hard for – it was very hard for my mother and me and Tamar to deal with Yael's death, especially because my father died a few years before. And then it is still hard to continue – to continue living with the loss of Yael. *Id*.
> Q: As you think back now about Yael, how has your life in these last ten years been affected? And how do you feel you have suffered as a result of her being murdered?
> A: Well, Yael was killed but life continues, and it's important to get our mind back on track. So with my mother's support, we all tried to get back on track and tried to get back to life as normal as it could be, although I am sure I didn't have a normal childhood as any other kids. It's hard, hard to continue. Little stuff, little events, Yael is not with us. It's hard for us, like when my sister was married, Yael – I was wishing she would be there to see Tamar get married. And other events, just the day-to-day, it is hard to live knowing that Yael is not with us, and that she could have been with us.
> Q: Do you miss her?
> A: Yes, terribly.
> Q: Do you think about her often?

12

>   A: Yes.

*Id*. at p. 16.

She continued:

> Obviously, it is hard to lose a sister, especially when I lost my father four years ago – four years before. . . When I was twelve years old, a few months later I had my bat mitzvah, and it's supposed to be a happy event, but it was – it was happiness but together with sadness. You know, of course since then, life is hard to continue without Yael. I miss her a lot and I think about her.

Id. at pp. 19-20.

Upon completing elementary school, Michal applied and was accepted to Emunah High School of Arts, the same school Yael had attended before she was murdered. *Id.* at 14. She testified:

> A. I remember that when I was in the fourth day of school, the same date that Yael was killed in an attack, it was hard for me to know that I am continuing what – getting past what Yael was not able to get past. It was also hard to be the same school that – and seeing all her friends that were with her in the grade, that she did not continue with them. *Id*.

Mrs. Goldberg-Botvin also told of the toll Yael's murder had on Michal:

> Q: Have you observed that – and how was Michal's life changed by the tragic murder of her older sister Yael?
> A: I think it was very difficult for her because they were very close and very good friends. And her – it was – I am sure very difficult for her. (Ex. C, p. 57.)
> To this day, Michal still feels the pain of her sister's murder.
> Q: If you close your eyes and think of her now, what do you see?
> A: I see the last time I saw Yael before she went to school on the same morning. I just remember her standing next to the door of the house – and saying goodbye.

Ex. D., p. 17.

Consequently, Michal should also receive the baseline solatium damages award of $2.5 million and such significant upward adjustment as the court deems proper.

13

B. Punitive Damages

Each of the individual Plaintiffs, Julie-Goldberg Botvin, Tamar Botvin, Michal Botvin and the Estate of Yael Botvin are entitled to punitive damages pursuant to 28 U.S.C. § 1605A against the Islamic Republic of Iran. In its July 13, 2012 Memorandum Opinion, this Court awarded compensatory damages to the Estate of Yael Botvin in the amount of $1,704,457, but did not make an award of punitive damages, as punitive damages were not compensable under the previously applicable statute, 28 U.S.C. § 1605(a)(7). Accordingly, Yael Botvin's estate requests punitive damages pursuant to 28 U.S.C. § 1605A.

Punitive damages serve to "punish and deter the actions for which they are awarded." *Murphy* 740 F. Supp. 2d at 80. Four factors determine the amount of punitive damages: "(1) the character of the defendants' act, (2) the nature and extent of harm to the plaintiffs that the defendants caused or intended to cause, (3) the need for deterrence, and (4) the wealth of the defendants." *Id*. Punitive damage awards under the FSIA serve multiple purposes:

> [b]y creating these rights of action, Congress intended that the Courts impose a substantial financial cost on states which sponsor terrorist groups whose activities kill American citizens. This cost functions both as a direct deterrent, and also as a disabling mechanism: if several large punitive damage awards issue against a foreign state sponsor of terrorism, the state's financial capacity to provide funding will be curtailed.

*Flatow*, 999 F. Supp. at 33.

The court in previous unrelated actions has determined and awarded punitive damages against the Islamic Republic of Iran for its sponsorship of terrorism under FSIA actions based on a pronounced formula. *See Valore*, 700 F.Supp.2d at 88. The court in *Valore* determined a multiplicand and then multiplied it by an ascertained multiplier. *Id*.

14

The court has previously found that Iran spent $25,000,000-$50,000,000 on material support to Hamas in the 1990s. *Estate of Botvin,* 873 F. Supp. 2d at 238; *Weinstein v. Islamic Republic of Iran*, 184 F.Supp.2d 13, 19 (D.D.C. 2002)(Notwithstanding the destructive purposes and objectives of HAMAS, the Islamic Republic of Iran gave the organization at least $25–$50 million in 1995 and 1996, and also provided other groups with tens of millions of dollars to engage in terrorist activities). The multiplier is then determined. *Valore*, 700 F.Supp.2d at 88.

The Court has previously considered a multiplier ranging between three (3) and ten (10). *In Estate of Heiser v. Islamic Republic of Iran* and *Flatow*, the court used a multiplier of three (3), reasoning that this was the minimum multiplier to deter Iran from terrorist activities. 659 F. Supp. 2d 20, 30 (D.D.C. 2009); 999 F. Supp. at 32. More recently, however, the court increased the multiplier to (5) as a response to Iran's increased participation in its terrorism lawsuits, rationalizing that it would send a greater message to Iran to end their rampant support of terrorism, and promote the goal of the "continuing need to punish and deter Iran from its increasing support of terrorism." *Valore*, 700 F.Supp.2d  at 89-90. The court has also supported the need for high punitive damages against Iran under this formula based on the character of their acts and extent of harm intended. *Bodoff v. Islamic Republic of Iran*, 424 F. Supp. 2d 74, 88 (D.D.C. 2006). In *Bodoff*, the court awarded high punitive damages under the formula in part because Iran supported a terrorist attack against a civilian bus, which was described by the court as extremely heinous, and intended to inflict "maximum pain and suffering on innocent people." *Id*. at 89.

In the present case, Iran supported a triple terrorist suicide homicide attack with explosives packed with nails, screws, pieces of glass, and chemical poisons against innocent adults and children in a popular civilian public shopping mall in Jerusalem, Israel. "The bombs were intended to be detonated in intervals designed to inflict maximum casualties on both civilians and responding rescue workers." *Estate of Botvin*, 873 F. Supp. 2d at 238. This resulted in over 200 injuries and 5 deaths, including that of 14 year-old Yael Botvin. This act was every bit as heinous and outrageous, if not more so, than the attack in *Bodoff*, and inflicted grievous and heinous "maximum pain and suffering on innocent people." Furthermore, as evidenced by recent cases against Iran, according to the U.S. Department of State's Country Reports on Terrorism, Iran is not ceasing its terrorist activities, which are becoming increasingly heinous. U.S. Dep't of State, Country Reports on Terrorism 2011, at 171-173 (2012) (available at http://www.state.gov/documents/organization/195768.pdf).[3]  Iran must be severely punished to deter their continued and ongoing support of terrorism. In order to accomplish this in the present case, the multiplicand should be not less than $50 million, the highest number in the estimated range Iran spent on Hamas in the 1990s. The multiplicand should be multiplied by a multiplier between three (3) and ten (10) times. Plaintiffs request the Court utilize   a multiplier of ten (10) considering the particularly heinous nature of this attack which wounded 200 and killed five persons, including the decedent, Yael Botvin.  In making this request for the Court to do so the Plaintiffs recognize that this is an increase of the multiplier of five (5) used in *Valore*, and that such award would result in a message sending punitive damages award of $500 million dollars and would be a continued and necessary effort to get the attention of the Islamic Republic

---

[3] The court previously relied on the 2008 version of this report in *Wultz*, 864 F. Supp. 2d at 41-42.

16

of Iran that this Court and the United States of America will not tolerate Iran's past or continued sponsorship of terrorism and murder.[4]

The increased multiplier will further continue the trend of increasing punitive punishment for Iran's terrorist activities (as evidenced by the increase of the multiplier from three (3) to five (5) in *Valore*) and the proposed multiplier of ten (10) in the instant action will ensure that Iran is sent the message that this Court and the United States of America will stand with American victims of Iranian terrorism and will do everything within its power to punish and deter Iran from its continued and ongoing sponsorship of terrorism against Americans and humanity, and will serve as a reminder to the Islamic Republic of Iran that the more they participate in terrorism, the more they will be fiscally punished. It will also contribute to the necessary effort of the United States to cripple Iran's ability to fund terrorism by making an impact on the terrorism allocations of this oil-rich state, and hopefully prevent the deaths of other innocent adults and children.

## **CONCLUSION**

WHEREFORE, for the reasons set forth above, Plaintiffs respectfully request that pursuant to 28 U.S.C. § 1605A, this Court enter default judgment in their favor, having

---

[4] It should be noted that in the Beirut bombing cases under the FSIA that have come before this Court, punitive damages were capped at a ratio of 3.44 to each dollar of compensatory damages. *Murphy*, 740 F. Supp. 2d 82-83. The court reasoned in those cases that "[r]ecurrent awards in case after case arising out of the *same facts* can financially cripple a defendant, over-punishing the same conduct through repeated awards with little deterrent effect." *Id.* at 81 (emphasis added). The present case is different and should not require the 3.44 ratio cap because although Campuzano received an award of damages against the Islamic Republic of Iran, it predated the enactment of 28 U.S.C. §1605A and accordingly, as to punitive damages pursuant thereto, this is the first and only case arising out of these particular facts and does not run the risk of over-punishing the defendant for the same acts. Should the Court, however, determine to apply punitive damages as a multiplier of compensatory damages, rather than of the terrorism budget, Plaintiffs pray this Court will award substantial punitive damages based upon the aggregate compensatory damages awarded by this Court to the Estate of Yael Botvin, her mother, and her sisters, in order to send the strongest possible message of punishment and deterrence to the Islamic Republic of Iran in keeping with this Court's long-standing commitment to speak out on behalf of the innocent American victims of Iranian terrorism.

found liability of the Defendant for the terrorist attack that murdered Yael Botvin, and award them damages for their solatium loss under 28 U.S.C. § 1605A(c).  Plaintiffs further request that the Court award them prejudgment interest, punitive damages and enter Judgment in favor of the Plaintiffs, with interest thereon as allowed by law, for all of which execution should be allowed.

Dated: March 19, 2013					Respectfully submitted,

							HEIDEMAN NUDELMAN
							  & KALIK, P.C.
							1146 19th Street, N.W., 5th Floor
							Washington, DC  20036
							Telephone:  202-463-1818
							Telefax:  202-463-2999

							By: /s/Richard D. Heideman_____
							     /s/ Tracy Reichman Kalik_____

							   Richard D. Heideman (No. 377462)
							   Noel J. Nudelman (No. 449969)
							   Tracy Reichman Kalik (No. 462055)

							PERLES LAW FIRM, P.C
							Steven R. Perles (No. 326975)
							Edward MacAllister   (No. 494558)
							1146 19th Street, NW 5th Floor
							Washington, DC  20036
							Telephone:  202-955-9055
							Telefax:  202-955-3806